UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: )<br>)<br>MICHAEL T. MCINTYRE d/b/a )<br>MT MCINTYRE AUTO SALES )<br>)<br>Debtor )<br>) | Chapter 7<br>Case No. 05-42296-JBR |
| )<br>MICHAEL T. MCINTYRE )<br>Plaintiff )<br>v. )<br>)<br>MICHAEL WHITE, EXECUTOR )<br>FOR ESTATE OF FREDERIKA )<br>MCINTYRE )<br>Defendant )<br>) | Adversary Proceeding<br>No. 05-4111 |

MEMORANDUM OF DECISION REGARDING DEBTOR'S MOTION AS TO THE APPLICABILITY OF THE AUTOMATIC STAY AND COMPLAINT TO DETERMINE DISCHARGEABILITY

This matter came before the Court on Debtor's Motion for Determination as to the Applicability of the Automatic Stay [Docket #8] and Response of Michael White, Executor for the Estate of Frederika McIntyre [Docket #13].[1] The Court held a non-evidentiary hearing and took these matters under advisement. Based on the record before

---

[1] On May 24, 2005 this Court issued an Order Consolidating The Debtor's Motion For Determination As To The Applicability Of The Automatic Stay And The Complaint To Determine Dischargeability Of A Debt [Docket #14]. As such this memorandum addresses the Plaintiff's Motion for Determination as well as the Complaint to Determine Dischargeability from Adversary Proceeding No. 05-4111

1

the Court, the Court makes the following findings of fact and rulings of law pursuant to Fed. R. Bankr. P. 7052.

I. BACKGROUND

On May 9, 1964, the Debtor, Michael McIntyre, and Frederika McIntyre were married. The two were married for over 25 years. Ultimately, a divorce decree was entered by the Worcester Probate and Family Court on June 22, 1990. Pursuant to the divorce decree, Debtor was to pay alimony.

In 1995, the Debtor filed for voluntary relief pursuant to chapter 11 of the Bankruptcy Code, Case No. 95-45356-HJB, but the case was subsequently converted to a chapter 7 proceeding. During the bankruptcy, Mrs. McIntyre sought and obtained a judgment that the alimony due her was non-dischargeable [Adversary Proceeding No. 96-04064, Docket #25]. On March 25, 2002, the Court closed the Debtor's bankruptcy [Docket #297].

By 2002, the alimony payments were significantly in arrears. In September of 2002, Mrs. McIntyre obtained a Supplemental Judgment of Contempt against the Debtor from the Probate and Family Court finding that the Debtor was in arrears in the amount of $96,678.56 and ordering the Debtor to pay $75.00 per week to cure the arrearage. On January 27, 2004 Mrs. McIntyre filed a Complaint for Modification with the Probate and Family Court seeking judgment that would increase the weekly payments made by the Debtor towards the arrearage. Mrs. McIntyre died on August 24, 2004. At the time of her death, Debtor owed $84,386.06 in alimony plus $20,283.43 in interest. On January 28, 2005 the Executor of Mrs. McIntyre's estate was substituted for Mrs. McIntyre as the plaintiff in the pending Probate and Family Court proceeding. The trial date for that

2

proceeding was set by the Probate and Family Court for April 18, 2005. The Debtor filed this Chapter 7 proceeding on April 15, 2005 and the Probate Court continued hearing on the Modification Motion pending this Court's decision on the Debtor's Motion to Determine the Applicability of Automatic Stay.

II. DISCUSSION

Under Section 523 of the Bankruptcy Code a debt owed to a former spouse for alimony is not dischargeable. *See* 11 U.S.C. § 523 (a)(5). An exception to the non-dischargeability of alimony is established pursuant to 11 U.S.C. § 523(a)(5)(A) which provides that alimony is not non-dischargeable to the extent that "such a debt is assigned to another entity, voluntarily, by operation of law, or otherwise..." Id. The Debtor argues that the substitution of the Executor as the Plaintiff in the Probate Court constituted an assignment by operation of law and therefore altered the non-dischargeability status of the alimony pursuant to the exception under § 523(a)(5)(A).

The Executor argues that dischargabilty of the alimony debt pursuant to § 523(a)(5)(A) is not proper as the Debtor is barred by *res judicata* because the Court previously determined that the debt was non-dischargeable. Alternatively, the Executor argues that to the extent that *res judicata* does not apply, the alimony is still non-dischargeable as it does not fall under the exception contemplated by § 523(a)(5)(A). The Executor argues that the right to alimony has not been "assigned" as an "assignment" is a contract that requires offer, acceptance and consideration, none of which, he asserts, are present in this case. At the hearing regarding the Motion for Determination as to the Applicability of Automatic Stay both parties told this Court that they were unable to find case law that was instructive on this issue.

3

The central issues are (1) whether the previous judgment of non-dischargeability bars an examination of the dischargeability of the same debt in light of the ex-wife's death under the doctrine of *res judicata* and (2) if not barred, whether the debt has been assigned by order of law and is therefore dischargeable.

A. RES JUDICATA

Under the doctrine of *res judicata* "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003). *See also* United States v. Alky Enterprises, Inc., 969 F.2d 1309, 1314 (1st Cir. 1992); Heghman v. Indorf (In re: Heghman), 316 B.R. 395, 403 (1st Cir. B.A.P. 2004). The normal rules of *res judicata* apply to decisions of the bankruptcy court. Heghman, 316 B.R. at 402. Accordingly, the Court must analyze each element of *res judicata* to determine whether or not it bars determination of the present issue.

There are two aspects of *res judicata*: claim preclusion and issue preclusion, also known as collateral estoppel. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). The Supreme Court has defined these two concepts as follows:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

New Hampshire v. Maine, 532 U.S. 742, 748-749, 121 S.Ct. 1808, 149 L. Ed.2d 968 (2001). In the instant case, Debtor seeks a determination of whether the current debt he

4

owes continues to qualify as non-dischargeable alimony or whether because of Mrs. McIntyre's death, it has assumed a new character.

"Claim preclusion does not bar a bankruptcy court's review of the nature of the debt in question for purposes of determining its dischargeability." Moore v. Murphy (In re Murphy), 297 B.R. 332, 347 (Bankr. D.Mass. 2003). *See also* Archer v. Warner, 538 U.S. 314, 123 S. Ct. 1462, 155 L. Ed. 2d 454 (2003). Collateral estoppel, or issue preclusion, however, applies to discharge exception proceedings brought under 11 U.S.C. § 523(a). *See* Grogan v. Garner, 498 U.S. 279, 284-285 (1991). In order for issue preclusion to apply, four elements must be present. The elements are:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 31 (1st Cir. 1994).

The Executor argues that the issue raised by the Debtor's Motion is the same as that in the Debtor's 1996 Adversary Proceeding, namely whether or not the alimony in question was dischargeable pursuant to § 523(a)(5). This view of the issue is incorrect. In this case the issue is whether or not the status of non-dischargeability has changed because of Mrs. McIntyre's death and subsequent passage of her alimony receivable to her estate. It is a question of whether there has been an assignment by order of law that renders the debt for alimony dischargeable. The 1996 Adversary Proceeding presented the issue of whether the money owed to Mrs. McIntyre should be properly classified as alimony or whether it was a property settlement. Because the first element required for an issue to be barred by the doctrine of collateral estoppel has not been met, this Court need

not consider whether the remaining elements have been met. The issue at present is not barred and therefore the Executor's *res judicata* argument is without merit.

B. ASSIGNMENT BY ORDER OF LAW

The Debtor argues that upon the death of Mrs. McIntyre, the alimony receivable passed to the Executor and that this constituted an assignment by operation of law. Therefore he argues his ex-wife's death created a debt that falls squarely within an exception to the non-dischargeability status of alimony pursuant to § 523(a)(5)(A). As such, the Debtor argues that automatic stay applies to the alimony owed to the decedent's Executor and that this debt is now dischargeable. The Executor argues that the Debtor's obligation to pay alimony was not "assigned" because under Larabee v. Potvin Lumber Co., 390 Mass. 636, 641 (1983), an assignment is a contract, and therefore requires offer, acceptance and consideration. The Executor misreads Larabee. Larabee was a case in which the particular assignment was a contract. "This assignment is a contract; therefore '[w]hen . . . the words [of a contract] are plain and free from ambiguity they must be construed in their usual and ordinary sense.'" Id. But not all assignments occur pursuant to a written agreement. Some, as in this case, happen by operation of law as the language of § 523(a)(5)(A) recognizes ("...but not to the extent that – (A) such debt is assigned to another entity, voluntarily, **by operation of law, or otherwise.**")(emphasis added). Under Massachusetts law, a decedent's assets pass to his estate by operation of law. Lynde v. Vose, 326 Mass. 621, 623, 96 N.E.2d. 172, 174 (1951).

The plain language of § 523(a)(5)(A) and case law appear to have settled the issue of whether or not a passing of debt for alimony to the decedent spouse's estate upon the death of the spouse constitutes an assignment by operation of law. Brunhoff v. Brunhoff,

Jr. (In re Henry Edward Brunhoff, Jr.), 4 B.R. 381 (Bankr. Fla. 1980)(alimony became dischargeable upon the death of a spouse as the passing of said alimony to the ex-wife's representative was an assignment by operation of law.)

> The debt has been assigned to another entity, the ex-wife's personal representative, by operation of law and is not, therefore, non-dischargeable under the provisions of the Code.

Id. See also Leppaluoto v. Combs, 101 B.R. 609, 615 (9th Cir. B.A.P. 1989)(the passing of an alimony claim to the estate upon death of the Debtor's ex-wife constituted an assignment by operation of law).

While these two cases give effect to the plain language of the statute, their holdings produce a result clearly at odds with Congress's avowed intent. The Supreme Court has held that

> Unquestionably the courts, in interpreting a statute, have some "scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results . . . or would thwart the obvious purpose of the statute."

Commissioner v. Brown, 380 U.S. 563, 571, 85 S. Ct. 1162, 14 L. Ed. 2d 75 ( 1965); *See also* Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643, 98 S. Ct. 2053, 56 L. Ed. 2d 591 (1978). Statutes are not to be read in a vacuum and the Court must take into account the likely intent of Congress if following the plain language would lead to an absurd result. In re Harvey Probber, Inc., 44 B.R. 647, 652 (Bankr. D. Mass. 1984). The court must look to the legislative history surrounding the statute when a literal interpretation "would produce an absurd result directly contrary to the clear intent of Congress..." In re MacKay, 7 B.R. 703, 706 (Bankr. D. Mass. 1980).

"The purpose of the § 523(a)(5)(A) exception is to protect ex-spouses and children." In re Dirks, 15 B.R. 775, 779 (Bankr. D.N.M. 1981). Although in In re Dirks

the court held the debts ordered to be paid to creditors in lieu of paying alimony to the ex-wife were dischargeable under § 523(a)(5)(A), the facts here are clearly distinguishable. In the current situation, no voluntary or ordered assignment has taken place while the ex-wife was alive. Mrs. McIntyre had every intention of continuing her efforts to collect the alimony due to her. This is evidenced by the fact that, prior to the time of her death, she had filed a Complaint for Modification with the Probate and Family Court seeking judgment that would increase the weekly payments made by the Debtor towards the arrearage. *See also* In re Bishop, 13 B.R. 304, 305 (Bankr. E.D.N.Y. 1981) (Where the court held that the intent of Congress in excepting the types of claims described by § 523(a)(5) was to insure that the dependents of a debtor would not be left "destitute" by the debtor's discharge); In re Miller, 8 B.R. 174, 177 (Bankr. N.D. Ohio 1981). This Court agrees in that the intent of § 523(a)(5)(A) is to protect the ex-spouse and children and not leave them destitute. To hold that significant alimony debts are dischargeable merely because the debtor was delinquent long enough to allow the unfortunate hands of fate to take their toll completely undermines this intention. A holding of this nature would encourage debtors to engage in a deplorable game of chance, withholding payment for a period of years all the while waiting for some unfortunate twist of fortune to allow complete absolution of debt. A debtor recently divorced from an ex-spouse suffering from a terminal illness, perhaps in dire need of alimony payments, need only bide his/her time and all debts will be forgiven. Such morbid theoretical situations are certainly within the realm of possibility and represent a complete and absurd departure from the clear intent of Congress in protecting ex-spouses and children from deadbeat debtors. This Court is not prepared to make such a departure.

It is this Court's position that Congress did not intend the result that the Debtor is seeking when it drafted § 523(a)(5)(A). The intent was to protect the ex-spouse and children to whom payment is owed. A holding that, upon the unfortunate death of Mrs. McIntyre, the alimony debt accumulated by the delinquent debtor is now dischargeable represents an absurd result that is clearly out of line with the intent of the drafters. Such a holding would likely encourage non-payment of alimony and result in ex-spouses and children being left destitute while the deadbeat debtor plays his game of chance. It is clear to this Court that a formula comprised of delinquency plus ill fate was never intended to equal absolution pursuant to § 523(a)(5)(A).

III. CONCLUSION

For the reason stated above, Debtor's Motion as to the Applicability of the Automatic Stay is DENIED.

Separate orders will issue.

Dated: July 22, 2005

By the Court,

Joel B. Rosenthal
United States Bankruptcy Judge